JASPER PENDINO AND GLORIA PENDINO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pendino v. Commissioner
Docket No. 17518-85.
United States Tax Court
T.C. Memo 1987-458; 1987 Tax Ct. Memo LEXIS 455; 54 T.C.M. (CCH) 482; T.C.M. (RIA) 87458; September 14, 1987. *455 Roger M. Hibbits, for the petitioners. Steven W. LaBounty, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: In his notice of deficiency respondent determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Addition to Tax
Year
Deficiency
Sec. 6653(a) [1]
1978
$ 6,976.18
$   348.81
1979
39,707.17
1,985.34
1980
10,214.68
510.73
After concessions, [2] the issues for decision are whether petitioners received unreported income in each of the years at issue and, if so, whether their failure to report the income was due to negligence or intentional disregard of rules or regulations within the meaning of section 6653(a). *456 FINDINGS OF FACT Background
Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. When they filed their petition herein, petitioners Jasper Pendino ("Mr. Pendino") and Gloria Pendino ("Mrs. Pendino") were residents of Mehlville, Missouri. They timely filed joint Federal income tax returns for each of the years at issue. Mr. Pendino is a welder. He was born in Italy in 1937 and immigrated to St. Louis in 1956 with his mother, father, and sister. He began working for his current employer two weeks after he arrived and has worked there steadily since. Mr. Pendino and his parents have maintained a close relationship. His father worked at the same company as he for 25 years. The parents continue to live within walking distance of petitioners, and petitioners visit them often. Mr. Pendino can read only a little English and cannot write. As he cannot write checks, he keeps a cash hoard on hand which he uses to make major purchases. Before he moved into a new home in 1979, he kept the hoard in a hole in the ceiling of the basement of his old home. Thereafter he *457 stored the hoard in a safe in his new home. Mr. Pendino married Mrs. Pendino in December of 1958. They purchased a house for $ 8,500 in 1959, and had their first child, a daughter, in July of that year. They moved to another home which cost $ 12,500 in 1964 and had their second child, a son, in September of that year. The home was modest, with two bedrooms, a living room, and a kitchen. It was located in a low income neighborhood. Petitioners made a $ 7,000 down payment toward the $ 12,500 purchase price of the home and paid the balance due within five years. Mrs. Pendino was unemployed from 1964 through 1969, and during that period Mr. Pendino's paycheck was the family's only significant income. From 1969 to 1973, Mrs. Pendino worked as a full-time comptometer operator. During 1973, she worked as a part-time researcher. The Pizza Parlor
Mrs. Pendino opened and operated a pizza parlor in January of 1975. The pizza parlor was staffed entirely by petitioners and their children from the time it opened through the years at issue. Mrs. Pendino carried supplies to the pizza parlor daily, as the building had no storage facilities. Mr. Pendino assisted at the pizza *458 parlor when he was off from his full-time job. Petitioners' daughter also worked there. The pizza parlor's receipts were all cash. Mrs. Pendino kept the parlor's books and presented them each year, along with petitioners' other financial records, to the family's accountant so that he could prepare their tax returns. The gross sales, expenses, and net income from the pizza parlor as reported on petitioners' joint Federal income tax returns for 1975 through 1980 are set forth below: Gross
Net
Sales
Expenses
Income
1975
$ 18,553.35
$ 18,785.69
($ 232.34)
1976
21,031.00
17,654.49
3,376.51 1977
22,147.00
17,285.28
4,861.72 1978
25,282.57
21,374.90
3,907.67 1979
26,133.76
20,380.53
5,753.23 1980
43,823.53
23,839.96
19,983.57 Petitioners' Lifestyle
Petitioner's lifestyle improved markedly after they opened their pizza parlor in 1975. In November of 1976, petitioners replaced the family car, a 1967 Ford Galaxie, by purchasing a new 1977 Cadillac DeVille for $ 12,500 cash. In August 1978, petitioners took a one month vacation to Italy with their two children and petitioner Jasper Pendino's mother and father. The *459 airline tickets alone cost $ 3,282.66, and were paid for by checks drawn on petitioners' checking account. In September 1978, petitioners contracted for the construction of a customized four-bedroom home, complete with in ground swimming pool. They paid the $ 144,387.58 total cost of the home and its furnishings in 1978, 1979, and 1980 as follows: Payment
Year
Cash
Check
Total
1978
$      -   $ 2,914.00
$ 2,914.00
1979
95,957.87
41,134.27
137,092.14
1980
59.00
4,322.44
4,381.44
$ 96,016.87
$ 48,370.71
$ 144,387.58
The $ 95,957.87 cash payment made in 1979 includes $ 83,583.32 of cashier's checks as follows: Date of Check
Amount
July 30, 1979
$ 24,000.00
August 6, 1979
3,583.32
July 30, 1979
36,000.00
July 30, 1979
20,000.00
Total
$ 83,583.32
The $ 83,583.32 was the total amount paid for the home at the closing on August 6, 1979. The $ 20,000 cashier's check represents the proceeds of a bank loan. The $ 36,000 cashier's check was purchased by petitioners with cash loaned to them by Mr. Pendino's parents. The remaining $ 27,583.32 came from a cash hoard maintained by Mr. Pendino. Petitioners *460 repaid Mr. Pendino's parents $ 30,440.08 of the loan later in 1979 which the parents used toward the purchase of a home. Of the $ 30,440.08 that petitioners repaid to Mr. Pendino's parents in 1979, $ 10,118.08 came from savings account number XXXX maintained at the Baden Bank in the names of petitioners in trust for their daughter. The balance of the account decreased $ 5,183.60 during 1979. Petitioners purchased a certificate of deposit numbered 12808 with a principal amount of $ 10,000 principal balance on August 13, 1979, and deposited it into their checking account numbered XXX5832 maintained at Baden Bank. The gross income petitioners reported on their joint Federal income tax returns in each of the years 1975 through 1980, and the sources of the income, are set forth below: Total
Jasper's
Pizza
Other
Gross
Wages
Parlor
Interest
Income
Income
1975
$ 11,421.60
($ 232.34)
$ 1,398.01
$ 725.15
$ 13,312.42
1976
12,108.19
3,376.51 2,120.20
42.91
17,647.81
1977
12,680.51
4,861.72 3,582.52
-
21,124.75
1978
12,895.24
3,907.67 4,785.69
-
21,588.60
1979
15,564.86
5,753.23 5,299.52
-
26,617.61
1980
13,534.48
19,983.57 165.72
-
33,683.77
*461 Respondent's Audit
In November of 1980, respondent notified petitioners that their 1979 return had been selected for audit. Respondent's agent, Gary Aubuchon, first met with Mrs. Pendino on December 8, 1980, at the pizza parlor. At that meeting, Aubuchon asked Mrs. Pendino whether petitioners had received any gifts, inheritances, or loans during 1979. She stated that they had received a $ 10,000 loan from their daughter. Aubuchon specifically asked Mrs. Pendino whether petitioners maintained a cash hoard, and she stated that they did not. Aubuchon met again with Mrs. Pendino on December 29, 1980. During the morning session of the interview Aubuchon reviewed the deposits and withdrawals made from petitioners' bank accounts. His preliminary analysis indicated that there were deposits to petitioners' accounts that could not be explained by petitioners' reported income. After lunch, Mrs. Pendino stated that a portion of the unexplained deposits came from a $ 36,000 cash loan that the couple had received from Mr. Pendino's parents. Aubuchon's findings led him to expand his audit of petitioners to 1978 and 1980. He identified deposits that could not be explained by reported *462 income and concluded that petitioners' books were inaccurate. Based on his reconstruction of petitioners' income by use of the source and application of funds method, respondent determined in his notice of deficiency that petitioners had received the following amounts of income during the years at issue which they had failed to report on their joint Federal income tax returns. Unreported
Year
Income
1978
$ 17,041.63
1979
78,409.43
1980
23,482.44
Respondent determined that the unreported income was self-employment income and increased petitioners' self-employment tax accordingly. Respondent finally determined that the underpayment of tax resulting from the unreported income is due to negligence or intentional disregard of rules and regulations and that petitioners are therefore liable for the addition to tax provided by section 6653(a). In an amendment to his answer, respondent alleged that petitioners had received an additional $ 21,260.55 of unreported income in 1979 and that their total deficiency for 1979 was $ 51,518.73. On brief respondent has revised his source and application of funds analyses [3] and now asserts that petitioners received *463 the following amounts of unreported income: Unreported
Year
Income
1978
[4] $ 16,233.65
1979
99,567.69
1980
28,826.15
OPINION Deficiency
Respondent's deficiency determination is based on his use of the source and application of funds method to reconstruct petitioners' income during the years at issue. We begin our discussion by addressing petitioners' argument that respondent is not entitled to use the source and application of funds method to reconstruct their income because the books they maintained for their pizza parlor are internally consistent and because they reported the amount of income reflected on those books. Petitioners' position is meritless. The fact that a taxpayer's books are internally consistent and appear on their face to be adequate *464 does not prevent respondent from using an indirect method to reconstruct the taxpayer's income. ; , affg. a Memorandum Opinion of this Court, cert. denied . See , cert. denied . The reason is obvious: a taxpayer may receive income that he fails to record on his books. . Respondent is entitled to test the completeness of a taxpayer's books by using an indirect method to reconstruct the taxpayer's income. ; , affg. on this issue a Memorandum Opinion of this Court. Respondent's reconstruction of petitioners' income serves both as evidence of the inadequacy of their records, and as evidence of the amount of their unreported income. . Having concluded *465 that respondent is entitled to use an indirect method to reconstruct petitioners' income, we must next address the accuracy of the reconstruction. The source and application of funds method of reconstructing income is based on the premise that the amount by which a taxpayer's application of funds for a taxable year exceeds his reported source of funds for that year is attributable to taxable income. ; . Taxpayers may explain any excess of application of funds over source of funds by showing that they had nontaxable sources of funds such as cash on hand, gifts, loans, and inheritances. ;Respondent's determinations in his notice of deficiency are presumed correct, and petitioners have the burden of proving that they received less taxable income than respondent determined therein. ; Rule 142(a). Respondent has the burden of proving that petitioners received more taxable income than he determined *466 in his notice of deficiency. Rule 142(a). We note at the outset that the amounts of some of the sources and applications of funds included on the analyses set forth in respondent's brief are different from the amounts he determined in his notice of deficiency. The changes increase the unreported income reflected by the analyses for 1979 and 1980. Respondent has the burden of proving that the changes are proper. The changed amounts set forth on brief were either stipulated to by the parties or established by credible and uncontested testimony. [5] The stipulations and trial testimony carry respondent's burden of proving that the amounts included in the analyses set forth on brief are correct. Petitioners do not challenge the specific sources and applications of funds included on the analyses set forth in respondent's brief. Petitioners instead assert that the apparent excess of funds applied over sources of funds was due to nontaxable sources. Those nontaxable *467 sources allegedly include (1) a $ 36,000 loan from Mr. Pendino's parents, (2) a loan from petitioners' daughter, and (3) a cash hoard maintained by Mr. Pendino. After discussing two preliminary adjustments to respondent's analyses, we will discuss each of the alleged nontaxable sources in turn.
Preliminary Adjustments
We have carefully examined the source and application of funds analyses that respondent sets forth on brief. Based on our examination, we conclude that the following adjustments must be made to the schedules for 1979 and 1980 to properly reflect petitioners' unreported income. Certificate of deposit - The parties stipulated at trial that petitioners purchased a $ 10,000 certificate of deposit numbered 12808 on August 10, 1973, that they withdrew that certificate of deposit at maturity on August 13, 1979, and that they deposited the $ 10,000 into their account number XXX5832 on that date. Respondent's sources and applications of funds schedule for 1979 does not, however, reflect the decrease in the certificate of deposit as a source of funds petitioners applied in 1979. We accordingly hold that the underreported taxable income reflected on respondent's *468 1979 sources and applications of funds schedule must be reduced by $ 10,000. Early withdrawal penalty - Petitioners paid a $ 3,679.56 interest penalty in 1980 when they withdrew two certificates of deposit in advance of their maturity. They deducted the interest penalty from the total income reported on their 1980 joint Federal income tax return in arriving at their adjusted gross income. On his 1980 sources and applications of funds schedule, respondent lists the $ 3,679.56 penalty as an application of petitioners' funds and also lists petitioners' total income reduced by the interest penalty as a source of funds. [6] Respondent's inclusion of the penalty on the schedule as both an application of funds and as a reduction of petitioners' income results in a double counting of the application of funds. We accordingly hold that the underreported taxable income reflected on respondent's 1980 sources and applications of funds schedule must be reduced by $ 3,679.56. Alleged Nontaxable *469 Sources
Loan from parents - Mr. Pendino testified that his parents loaned him $ 36,000 that he used in 1979 toward the $ 83,583.32 due at the closing of his new home. He also testified that later in 1979 he repaid $ 30,000 of that amount to his parents when they purchased a new home. Mrs. Pendino confirmed that the payment made at closing included funds from Mr. Pendino's parents. Respondent's sources and applications of funds schedule for 1979 lists a $ 30,440.08 transfer to petitioners' parents for the purchase of their home as an application of petitioners' funds, but fails to list the alleged $ 36,000 loan from the parents as a source of petitioners' funds. We believe Mr. Pendino's testimony that his parents loaned him $ 36,000 in 1979 because it is consistent with what petitioners and their parents told respondent during his investigation, and because it explains why petitioners were willing to transfer their parents $ 30,440.08 later in 1979. Respondent's agent Gary Aubuchon testified that he questioned Mrs. Pendino on December 29, 1980, concerning a number of large deposits to their account. He stated that she told him that Mr. Pendino's father had loaned them *470 $ 36,000 cash. At a later meeting petitioners clarified that $ 14,000 of the $ 36,000 had actually come from Mr. Pendino's mother. Aubuchon conceded that, when he interviewed the father and mother separately, the father confirmed loaning petitioners $ 22,000 and that the mother confirmed giving them a large sum of cash. In these circumstances we consider petitioner's testimony that he received a $ 36,000 loan from his parents in 1979 to be credible. The $ 36,000 represents a source of funds that is not reflected on respondent's sources and applications of funds schedule for 1979. We accordingly hold that the underreported taxable income reflected on respondent's 1979 sources and applications of funds schedule must be reduced by $ 36,000. Loan from daughter - The parties have stipulated that $ 10,118.08 of the $ 30,440.08 that petitioners repaid to Mr. Pendino's parents in 1979 came from savings account number XXXX. That account was maintained by petitioners as trustees for their daughter. Petitioners assert that the $ 10,118.08 transfer was a loan from the daughter that was a source of the funds they applied during 1979. Respondent argues that petitioners have failed to *471 satisfy their burden of proof that the transaction constituted a loan. Although we believe that the evidence indicates that the $ 10,118.08 was a loan to petitioners, we need not decide the issue. Whether or not the funds received from the trust account were a loan, they were a source of the funds petitioners applied in 1979. [7] As the source of funds is not reflected on respondent's sources and applications of funds schedule for 1979, we hold that the underreported taxable income reflected on respondent's sources and applications of funds schedule for 1979, we hold that the underreported taxable income reflected on respondent's 1979 sources and applications of funds schedule must be reduced by $ 10,118.08. *472 Cash hoard - Cash that petitioners had on hand at the beginning of 1978 can be a nontaxable source of the funds they applied during the years at issue. Petitioners both testified that Mr. Pendino maintained a cash hoard that he kept in the basement of his home. Their explanation of the reason for the hoard -- Mr. Pendino's inability to write checks -- was plausible, and we found their testimony that Mr. Pendino maintained the hoard to be credible. We therefore found as a fact that Mr. Pendino had a cash hoard at the beginning of 1978. The evidence regarding the amount of the hoard and how it was used is scanty, however. Petitioners presented no evidence of the size of the hoard either at the beginning of 1978 or at any other time during the years at issue. Mr. Pendino himself admitted that he failed to keep close track of how much cash he had. The only specific testimony given regarding the use of the cash during the years at issue was that part of the hoard was used by petitioners on August 6, 1979, as part of the payment they made to close the contract for their home. Both petitioners testified that the funds they used at closing came from three sources: (1) banks, *473 (2) Mr. Pendino's parents, and (3) Mr. Pendino's hoard. We believe this aspect of their testimony. Petitioners paid a total of $ 83,583.32 at the closing for the home. We found that $ 20,000 of that amount came from a bank, that $ 36,000 came from Mr. Pendino's parents, and that the remaining $ 27,583.32 came from Mr. Pendino's hoard. The $ 27,583.32 depletion of Mr. Pendino's hoard represents a source of funds that is not reflected on respondent's sources and applications of funds schedule for 1979. We accordingly hold that the underreported taxable income reflected on respondent's 1979 sources and applications of funds schedule must be reduced by $ 27,583.32. In sum, we hold that petitioners have failed to demonstrate error in respondent's computation of their unreported income in the years at issue except as to the following items, which we allow as follows: Year
1978
1979
1980
Unreported Income asserted
by respondent
$ 16,233.65
$ 99,567.69 $ 28,826.15 Withdrawal from certificate
of deposit
-
(10,000.00)
-
Early withdrawal penalty
-
-
(3,679.56)
Loan from parents
-
(36,000.00)
-
Transfer from daughter
-
(10,118.08)
-
Depletion of cash hoard
-
(27,583.32)
-
Unreported income corrected [8]
$ 16,233.65
$ 15,866.29 [9] $ 25,146.59 *474 *475 Section 6653(a)
Respondent determined that petitioners are liable for the addition to tax under section 6653(a) for each of the years at issue. Petitioners bear the burden of proving that the addition under section 6653(a) determined in respondent's notice of deficiency does not apply. , affg. per curiam , cert. denied ; . Section 6653(a) imposes an addition to tax if any part of an underpayment is due to negligence or intentional disregard of rules and regulations. Negligence under section 6653(a) is defined as lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . Petitioners have failed to prove that they did not receive substantial amounts of unreported income in each of the years at issue. They offered no explanation for their failure to report the income. In these circumstances, we hold that petitioners have failed to prove that they *476 are not subject to the addition to tax for negligence for each of the years at issue. To reflect the foregoing and the concessions of the parties, Decision will be entered under Rule 155.
APPENDIX A SOURCES AND APPLICATIONS OF FUNDS
1978
Application of Funds
Increase in Bank Accounts:
Baden Bank No. XXX5832
$ 1,010.02
Baden Bank No. X1951
4,635.50
Baden Bank No. XXXX
825.00
Charter Bank No. XXXX1400
7,450.71
Community Federal No. XX5380
1,675.13
Community Federal No. XX5381
1,675.13
Community Federal No. XX5382
670.05
Community Federal No. XX5383
251.26
$ 18,192.80
Loan Payments:
None
$ 0.00
0.00
Personal Living Expenses:
Cash: Food
$ 2,600.00
Gasoline
2,600.00
Utilities
696.00
Check:
1,845.56
Home Construction & Furnishings:
Cash
0.00
Check
2,914.00
Vacation
3,282.66
Estimated Tax Payments
1,350.00
Income Tax Withholding
1,671.93
FICA Tax Withheld
780.07
Inventory Increases
557.00
Income Tax Paid for Prior Year
1,875.64
20,172.86
TOTAL APPLIED
$ 38,365.66
Source of Funds
Adjusted Gross Income Reported
$ 21,588.60
Loans From Banks:
None
$ 0.00
0.00
Depreciation
$ 543.41
Inventory Decrease
0.00
543.41
TOTAL SOURCES   $ 22,132.01
UNDERREPORTED TAXABLE INCOME
$ 16,233.65
*477 APPENDIX B SOURCES AND APPLICATIONS OF FUNDS
1979
Application of Funds
Increase in Bank Accounts:
Baden Bank No. XXX5832
($ 648.43)
Baden Bank No. X1951
(8,628.64)
Baden Bank No. XXXX
410.25 Charter Bank No. XXXX1400
(10,686.67)
Community Federal No. XX5380
1,810.10 Community Federal No. XX5381
1,810.10 Community Federal No. XX5382
724.03 Community Federal No. XX5383
271.51 Community Federal No. XX9915
1.18 ($ 14,936.57)
Installment sale of property -- Randazzo:
Interest
$ 150.00 150.00 Loan Payments:
None
$ 0.00 0.00 Personal Living Expenses:
Cash: Food
$ 5,200.00 Gasoline
2,600.00 Utilities
2,800.00 Check:
1,585.11 Home Construction & Furnishings:
Cash
95,957.87 Check
41,134.27 Estimated Tax Payments
1,800.00 Income Tax Withholding
2,185.63 FICA Tax Withheld
954.28 Income Tax Paid for Prior Year
302.61 154,519.77 Purchase of Home - Emanuele and
Rosina Pendino: November 5, 1979
Baden Bank - Jasper Pendino
$ 10,440.08 Community Federal - Jasper Pendino
20,000.00 30,440.08 TOTAL APPLIED
$ 170,173.28 *478 Source of Funds
Adjusted Gross Income Reported
$ 26,617.61
Loans From Banks:
Community Federal Loan Dated 11/05/79
$ 20,000.00
Community Federal Loan Dated 07/30/79
20,000.00
40,000.00
Sale of Residence - Ted and Mary Randazzo:
Downpayment
$ 2,000.00
Mortgage Principal
13.57
2,013.57
Depreciation
$ 543.41
Inventory Decrease
1,431.00
1,974.41
TOTAL SOURCES
$ 70,605.59
UNDERREPORTED TAXABLE INCOME
$ 99,567.69
APPENDIX C SOURCES AND APPLICATIONS OF FUNDS
1980
Application of Funds
Increase in Bank Accounts:
Baden Bank No. XXX5832
($ 162.29)
Baden Bank No. X1951
118.66 Baden Bank No. XXXX
60.00 Charter Bank No. XXXX1400
1,339.63 Community Federal No. XX5380
(24,275.36)
Community Federal No. XX5381
(24,275.36)
Community Federal No. XX5382
782.37 Community Federal No. XX5383
293.38 Community Federal No. XX9915
911.84 Melville Bank No. X5626
26,617.78 Community Federal No. XX5380 - Interest
1,452.66 Community Federal No. XX5381 - Interest
959.03 ($ 16,177.66)
Installment sale of property -- Randazzo:
Interest
$ 1,790.92 1,790.92 Loan Payments:
Community Federal Loan Dated 11/05/79
$ 22,333.68 Community Federal Loan Dated 07/30/79
21,750.00 44,083.68 Penalty - Early Withdrawal on CD's:
Community Federal No. XX5380
$ 1,936.99 Community Federal No. XX5381
1,742.57 3,679.56 Personal Living Expenses:
Cash: Food
$ 5,200.00 Gasoline
2,600.00 Utilities
2,800.00 Check:
3,865.52 Home Construction & Furnishings:
Cash
59.00 Check
4,322.44 Real Estate - Business:
Rubinelli, Peter - Parcel of Land
20,000.00 Mueller Surveying
290.00 Gina Pendino's Automobile
4,000.00 Estimated Tax Payments
1,950.00 Income Tax Withholding
2,045.41 FICA Tax Withheld
821.03 Inventory Increases
0.00 Income Tax Paid for Prior Year
1,161.79 49,115.19 TOTAL APPLIED
$ 82,491.69 *479 Source of Funds
Adjusted Gross Income Reported
$ 30,004.21
Loans From Banks:
Mehlville Bank Loan No. 681
$ 20,000.00
20,000.00
Sale of Residence - Ted and Mary Randazzo:
Mortgage Principal
$ 171.92
171.92
Depreciation
$ 543.41
Inventory Decrease
2,946.00
3,489.41
TOTAL SOURCES
$ 53,665.54
UNDERREPORTED TAXABLE INCOME
$ 28,826.15
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. ↩
2. Petitioners asserted in their petition that respondent improperly increased their self-employment tax, and that the statute of limitations bars the assessment of the deficiencies in issue. Petitioners have stipulated into the record consents extending the time to assess tax for the years at issue that appear to be valid, and do not argue on brief that the statute of limitations bars the assessment of the deficiencies in issue. We accordingly conclude that they have conceded the issue. Rule 151(e). See . See also . Petitioners do not address the self-employment tax issue in either their trial memorandum or on brief, and we accordingly conclude that they have conceded that their unreported income, if any, is subject to self-employment tax as determined by respondent. Money v. Commissioner, 89 T.C.    ↩(July 6, 1987) (slip op. at 4). 3. Respondent's revised source and application of funds analyses for 1978, 1979, and 1980, are set forth at Appendices A, B, and C, respectively. ↩
4. We treat respondent's present position that petitioners earned $ 16,233.65 of unreported income in 1978 to be a concession, pro tanto, of his determination in his statutory notice that petitioners earned $ 17,041.63 of unreported income in 1978. ↩
5. The one item that was established by trial testimony was a $ 4,000 application of funds in 1980. Petitioners' daughter Gina testified that petitioners gave her $ 4,000 in 1980 toward the purchase of an automobile. ↩
6. The $ 30,004.21 adjusted gross income reflected on the schedule as a source of funds represents petitioners' total reported income of $ 33,683.77 less the $ 3,679.56 interest penalty.↩
7. It is clear that respondent determined that the funds in the trust account did not belong to petitioners. The balance in the account decreased $ 5,183.60 during 1979. Respondent's source and application of funds schedule for 1979 does not, however, reflect the $ 5,183.60 decrease as a source of petitioners' funds. Had respondent determined that the account belonged to petitioners, he would have reflected the $ 5,183.60 decrease as a source of the funds petitioners applied during the year. ↩
8. After adjusting respondent's determinations to reflect our conclusions set forth above, unreported income remains in each of the three years in issue. Apart from petitioners' failure to prove that they did not receive the unreported income, we believe that the evidence in the record of the sudden and large improvement in petitioners' lifestyle after opening the pizza parlor supports respondent's determination that they received unreported income during the years at issue. Neither Mr. Pendino's wages, which remained relatively stable from 1975 through 1980, nor the income petitioners reported receiving from the pizza parlor, explains the purchases petitioners made. We find it curious that petitioners' income from the pizza parlor, which had never exceeded $ 5,800 in any of the years from 1975 though 1979, would suddenly surge to nearly $ 20,000 in 1980, the first year for which petitioners filed a return after respondent began his audit. The record does not suggest a reason for the increase. ↩
9. The unreported income for 1980, as herein determined, exceeds the unreported income as determined by respondent in his statutory notice. Since respondent has not amended his pleadings with respect to this year, our decision for the year 1980 will not exceed the amount of deficiency determined by respondent. ↩